**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| P.J.E.S.,* A MINOR CHILD, by and through his father and NEXT FRIEND, Mario Escobar Francisco, on behalf of himself and others similarly situated, | ) ) ) ) | |
| | ) ) | |
| *Plaintiff*, | ) ) | No. 1:20-cv-____ |
| v. | ) ) | |
| CHAD F. WOLF, Acting Secretary of Homeland Security, in his official capacity, et al., | ) ) ) | |
| | ) ) | |
| *Defendants*. | ) ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iv

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ........................................................................................................................ 6

   I. THE PROPOSED CLASS SATISFIES RULE 23(a)'S REQUIREMENTS ......................... 7

     A. The Proposed Class is Numerous ...................................................................... 7

     B. The Class Presents Common Questions of Law and Fact ............................... 11

     C. Plaintiff's Claims are Typical of Class Members' Claims ............................... 13

     D. Plaintiff and Plaintiff's Counsel Will Adequately Protect the Interests of the Proposed

     Class ................................................................................................................... 14

   II. THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS ...................... 16

CONCLUSION .................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*A.H. v. Sessions*,
   905 F.3d 1137 (9th Cir. 2018) ................................................................................................. 7

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United
   States v. Pompeo*,
   334 F.R.D. 449 (D.D.C. 2020) ...................................................................................... 8, 10, 14

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ............................................................................................... 16

*Bynum v. District of Columbia*,
   214 F.R.D. 27 (D.D.C. 2003) ...................................................................................... 13, 14, 16

*Coleman ex rel. Bunn v. District of Columbia*,
   306 F.R.D. 68 (D.D.C. 2015) ..................................................................................... passim

*Damus v. Nielsen*,
   313 F. Supp. 3d 317 (D.D.C. 2018) .............................................................................. 7, 13, 15

*DL v. District of Columbia*,
   302 F.R.D. 1 (D.D.C. 2013) ................................................................................................ 8, 9

*DL v. District of Columbia*,
   713 F.3d 120 (D.C. Cir. 2013) .............................................................................................. 11

*DL v. District of Columbia*,
   860 F.3d 713 (D.C. Cir. 2017) .............................................................................................. 16

*Franco-Gonzalez v. Napolitano*,
   No. 10-CV-2211, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) ......................................... 15

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ....................................................................................................... 11, 12

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*,
   446 U.S. 318 (1980) .............................................................................................................. 8

*Hardy v. District of Columbia*,
   283 F.R.D. 20 (D.D.C. 2012) ............................................................................................... 13

*Howard v. Liquidity Servs. Inc.*,
   322 F.R.D. 103 (D.D.C. 2017) ............................................................................................. 12

*J.B.B.C. v. Wolf*,
No. 20-CV-01509-CJN (D.D.C. filed June 9, 2020) ................................................................ 5

*\*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) ........................................................................... passim

*Kifafi v. Hilton Hotels Ret. Plan*,
189 F.R.D. 174 (D.D.C. 1999) ............................................................................ 10

*L.V.M. v. Lloyd*,
318 F. Supp. 3d 601 (S.D.N.Y. 2018) .................................................................... 7

*Ms. L. v. U.S Immigration & Customs Enf't*,
331 F.R.D. 529 (S.D. Cal. 2018) ..................................................................... 7, 15

*N.S. v. Hughes*,
__ F.R.D. __, No. 1:20-CV-101-RCL, 2020 WL 2219441 (D.D.C. May 7, 2020) ............... 8, 9

*Nio v. U.S. Dep't of Homeland Sec.*,
323 F.R.D. 28 (D.D.C. 2017) ...................................................................... 7, 13, 17

*O.A. v. Trump*,
404 F. Supp. 3d 109 (D.D.C. 2019) ................................................................. 6, 7

*R.I.L-R v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015) .............................................................. 7, 11, 15

*Ramirez v. U.S. Immigration & Customs Enf't*,
338 F. Supp. 3d 1 (D.D.C. 2018) ....................................................................... passim

*Samma v. U.S. Dep't of Defense*,
No. 20-CV-1104 (ESH), 2020 WL 4501000 (D.D.C. Aug. 4, 2020) ....................................... 6

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017) ....................................................... 7, 10, 15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ............................................................................................. 6

*Shelton v. Bledsoe*,
775 F.3d 554 (3d Cir. 2015) .............................................................................. 16

*Taylor v. D.C. Water & Sewer Auth.*,
241 F.R.D. 33 (D.D.C. 2007) ............................................................................... 8

*Thorpe v. District of Columbia*,
303 F.R.D. 120 (D.D.C. 2014) ....................................................................... 11, 12

iii

*Twelve John Does v. District of Columbia*,
117 F.3d 571 (D.C. Cir. 1997) ................................................................. 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................. 11, 12, 13, 17

**Statutes**

42 U.S.C. § 265 ................................................................. 3

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
Pub L. No. 110-457, 122 Stat. 5044 (2008), 8 U.S.C. § 1232 ........................ 1, 11, 17

**Rules**

Fed. R. Civ. P. 23 ................................................................. passim

Fed. R. Civ. P. 23(a) ................................................................. 1, 6, 16, 18

Fed. R. Civ. P. 23(a)(1) ................................................................. 7

Fed. R. Civ. P. 23(a)(2) ................................................................. 11, 12

Fed. R. Civ. P. 23(a)(3) ................................................................. 13

Fed. R. Civ. P. 23(a)(4) ................................................................. 14

Fed. R. Civ. P. 23(b) ................................................................. 16

Fed. R. Civ. P. 23(b)(2) ................................................................. passim

**Regulations and Orders**

85 Fed. Reg. 16,559 (Mar. 24, 2020) ................................................................. 3

85 Fed. Reg. 17,060 (Mar. 26, 2020) ................................................................. 3

85 Fed. Reg. 22,424 (Apr. 22, 2020) ................................................................. 3

85 Fed. Reg. 31,503 (May 26, 2020) ................................................................. 3, 9

**Other Authorities**

*Hearing on CBP Oversight Before the U.S. Senate Committee on Homeland Security and Government Affairs* (June 25, 2020), available at https://www.hsgac.senate.gov/cbp-oversight-examining-the-evolving-challenges-facing-the-agency ................................................................. 4, 5, 9

U.S. Customs and Border Protection and U.S. Border Patrol, "Operation Capio" Memo, available at https://www.documentcloud.org/documents/6824221-COVID-19-CAPIO.html ................. 3

iv

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2014)................................................. 8

Wright, Miller & Kane, *Federal Practice & Procedure* vol. 7A § 1763 (3d ed. 2005) ............... 11

## INTRODUCTION

A class action lawsuit is appropriate to challenge Defendants' unlawful practice of summarily expelling unaccompanied migrant children under a shadow deportation system that is referred to here as the "Title 42 Process."  Under longstanding safeguards in the immigration statutes for unaccompanied children, Plaintiff was entitled to various protections—including expeditious transfer to the care of the Office of Refugee and Resettlement ("ORR"), release to his father as soon as possible, and a full hearing before an immigration judge on his claims for humanitarian relief.  Instead, Defendants funneled him into an alternative immigration system based on an unprecedented and unlawful series of Orders issued by the Center for Disease Control and Prevention ("CDC"), which purport to authorize the expulsion of unaccompanied minors without any hearing.  The Order is based on the government's supposed expulsion powers under the public health provisions of Title 42 of the U.S. Code.

Plaintiff seeks to certify the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All unaccompanied immigrant children who (1) are or will be detained in U.S. government custody in the United States, and (2) are or will be subjected to the Title 42 Process.

The proposed class readily satisfies the requirements of Rule 23.

The proposed class currently includes hundreds of unaccompanied children who are subjected to the Title 42 Process every month, as well as even more future class members, which is sufficient to satisfy numerosity.  The class raises common legal questions that will generate common answers, including whether the public health laws in Title 42 authorize expulsions, and if so, whether those expulsions violate numerous statutory proscriptions, including those in the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") designed to protect

unaccompanied minors.  The class also raises common factual issues because Plaintiff and class members are all unaccompanied migrant children subject to the same practice of summary expulsion under the Title 42 Process, without receiving any of the procedures provided in longstanding immigration statutes protecting children and those seeking protection.  Plaintiff's legal claims are typical of those whom he seeks to represent—that is, other unaccompanied children who are or will be subjected to the Title 42 Process.  Plaintiff is also adequately represented by lead counsel, the American Civil Liberties Union Foundation Immigrants' Rights Project, as well as other organizations with significant experience in litigating class actions and cases involving the rights of noncitizens.

Plaintiff's proposed class likewise satisfies Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Defendants are summarily expelling unaccompanied children under the Title 42 Process without any of the procedures provided in the immigration statutes.  Accordingly, the class as a whole is entitled to an order enjoining Defendants from applying the Title 42 Process to Plaintiff and class members.

This Court should grant class certification under Rule 23(b)(2).  Plaintiff also requests that he be appointed Class Representative and that the undersigned be appointed Class Counsel.

## BACKGROUND

### The Title 42 Process

As the Complaint describes, the Title 42 Process is a novel mechanism, established in a series of recently-issued regulations, orders, and guidance documents, that the government is using

to summarily expel noncitizens from the United States if they lack immigration documentation such as a visa. *See generally* Complaint (describing the Title 42 Process).[1]

The legal authority the government has invoked for this new expulsion system is 42 U.S.C. § 265, which provides in relevant part that the Surgeon General may "prohibit . . . the introduction of persons and property" from designated places based on the danger posed by a communicable disease. The CDC has directed the "immediate suspension of the introduction" of certain persons, referred to as "covered aliens." 85 Fed. Reg. 17,060, 17,067 (Mar. 26, 2020). "Covered aliens" are those seeking to enter the United States from Canada or Mexico "at POEs [ports of entry] who do not have proper travel documents, aliens whose entry is otherwise contrary to law, and aliens who are apprehended near the border seeking to unlawfully enter the United States between POEs." *Id*. at 17,061.

Noncitizens subject to the Title 42 Process "will be transported to the nearest POE and immediately returned to Mexico or Canada, depending on their point of transit." CBP Memo at 3. Those who are "not amenable to immediate expulsion to Mexico or Canada, will be transported to a dedicated facility for limited holding prior to expulsion" to their home country. *Id*.

---

[1] *See also* Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 16,559 (Mar. 24, 2020) (effective date Mar. 20, 2020); Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17,060 (Mar. 26, 2020) (effective date Mar. 20, 2020); Extension of Order Under Sections 362 and 365 of the Public Health Service Act, 85 Fed. Reg. 22,424 (Apr. 22, 2020) (effective date Apr. 20, 2020); Amendment and Extension of Order Under Sections 362 and 365 of the Public Health Service Act, 85 Fed. Reg. 31,503 (May 26, 2020) (effective date May 21, 2020); U.S. Customs and Border Protection and U.S. Border Patrol, "Operation Capio" Memo ("CBP Memo"), *available at* https://www.documentcloud.org/documents/6824221-COVID-19-CAPIO.html.

The Title 42 Process does not exempt minors from forcible expulsion.  To the contrary, unaccompanied children are routinely subjected to the Title 42 Process and removed from the country under that asserted authority.  Declaration of Stephen B. Kang ("Kang Decl."), ¶¶ 5-7.

**Named Plaintiff and the Proposed Class**

Plaintiff P.J.E.S. is a 16-year-old boy from Guatemala who fled that country to escape persecution and possibly death.  Plaintiff's father currently resides in the United States and has a pending immigration case.

Plaintiff is from an indigenous Mayan family.  In Guatemala, he and his other family members were threatened with death due to his father's political opinions.  Gang members had also threatened to kill Plaintiff when he resisted their efforts to recruit him.  Plaintiff was ultimately forced to flee to the United States to seek safety.  He entered the United States by himself (and so is deemed by statute an "unaccompanied minor").  He faces deportation back to Guatemala pursuant to the unprecedented and unlawful Title 42 Process without any hearing or access to the other protections to which he/she should be entitled under the immigration laws.

Plaintiff's experiences are representative of those of many other children under Defendants' practice of summarily expelling unaccompanied children without providing any of the protections guaranteed by the immigration statutes.  According to Defendants' own public statements, they have expelled approximately two thousand unaccompanied children pursuant to the Title 42 Process since the policy was first put into effect by the March 20, 2020 CDC Order. *See Hearing on CBP Oversight Before the U.S. Senate Committee on Homeland Security and Government Affairs* 1:47:02-:10 (June 25, 2020) (statement of Mark Morgan, CBP Chief Operating Officer), https://www.hsgac.senate.gov/cbp-oversight-examining-the-evolving-

challenges-facing-the-agency (testifying that CBP had "removed approximately 2,000 children under the CDC Title 42 order" as of June 25).[2]

**Prior Litigation Regarding Individual Children Subject to the Title 42 Process**

In June 2020, a 16-year-old Honduran boy called J.B.B.C. initiated one of the first lawsuits to challenge the legality of the Title 42 Process. *See J.B.B.C. v. Wolf*, No. 20-CV-01509-CJN (D.D.C. filed June 9, 2020). J.B.B.C. was represented by many of the undersigned counsel here. At the time he filed suit, he was detained in a hotel in DHS custody awaiting deportation. He filed an emergency motion to stay his removal in the U.S. District Court for the District of Columbia.

On June 24, 2020, Judge Carl J. Nichols granted J.B.B.C. a preliminary injunction, finding that J.B.B.C. was likely to succeed on his claim that the Title 42 Process could not lawfully be applied to an unaccompanied child like him. *See* Kang Decl., Ex. D. Judge Nichols then directed the parties to agree on an expedited summary judgment schedule. On June 28, the day before the parties were set to propose their joint schedule, Defendants informed J.B.B.C.'s counsel that they were voluntarily taking the boy out of the Title 42 Process and transferring him to ORR custody. Kang Decl., ¶ 7. The next day, Defendants finalized the transfer and subsequently sought dismissal of his case as moot. *See* Defendants' Motion to Dismiss, *J.B.B.C. v. Wolf*, No. 20-cv-1509-CJN, ECF No. 47.

Since that time, undersigned Plaintiff's counsel has learned of at least 42 other cases of unaccompanied children in the United States subject to the Title 42 Process. Kang Decl., ¶¶ 11-12. Many of those children were on the verge of deportation at the time counsel learned of them.

---

[2] News reports and an investigatory report by a special monitor in another federal litigation confirm that Plaintiff's experiences are consistent with those of numerous other children subject to the Title 42 Process. *See* Kang Decl., Exs. A-C. Defendants apprehend children, then typically keep them in CBP facilities or hotels. Unaccompanied children are detained for multiple days while they await transport back to their countries of origin.

Every time Plaintiff's counsel has contacted Defendants about a child who had not yet been removed, the government has taken that child out of the Title 42 Process.    In one case, E.Y., undersigned counsel amended to add him to J.B.B.C.'s case, but Defendants subsequently took that child out of the Title 42 Process as well and filed a motion to dismiss the case as moot.  *See* Defendants' Motion to Dismiss, *J.B.B.C. v. Wolf*, No. 20-cv-1509-CJN, ECF No. 47 at 3.

## ARGUMENT

A plaintiff whose suit meets the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).  The "suit must satisfy the criteria set forth in [Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)."  *Id.*

Plaintiff's proposed class satisfies all four of the Rule 23(a) prerequisites.  The proposed class likewise meets the requirements for certification under Rule 23(b)(2).  This Court should therefore certify the proposed class in keeping with the numerous court decisions in this District and others certifying classes in actions challenging the federal government's administration of immigration programs.  *See, e.g.*, *J.D. v. Azar*, 925 F.3d 1291, 1312-25 (D.C. Cir. 2019) (affirming certification of class of pregnant unaccompanied children in ORR custody); *O.A. v. Trump*, 404 F. Supp. 3d 109, 154-60 (D.D.C. 2019) (certifying nationwide class of all asylum seekers subject to regulation rendering them ineligible for asylum for entering the country outside ports of entry); *Ramirez v. U.S. Immigration & Customs Enf't*, 338 F. Supp. 3d 1, 42-50 (D.D.C. 2018) (certifying nationwide class of unaccompanied children transferred from ORR to ICE custody after turning 18, without consideration of the least restrictive custody setting available); *Samma v. U.S. Dep't of Defense*, No. 20-CV-1104 (ESH), 2020 WL 4501000, at *1 (D.D.C. Aug. 4, 2020) (certifying

class of noncitizen military service members challenging agency policy on naturalization procedures); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 328-35 (D.D.C. 2018) (provisionally certifying class of arriving asylum seekers found to have a credible fear of persecution or torture and detained by five regional ICE filed offices); *Nio v. U.S. Dep't of Homeland Sec.*, 323 F.R.D. 28, 32-36 (D.D.C. 2017) (certifying nationwide class of servicemember citizenship applicants subjected to heightened security screening program); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179-83 (D.D.C. 2015) (provisionally certifying nationwide class of Central American mothers and children determined to have credible fear of persecution but denied release from immigration detention without individualized consideration); *see also, e.g.*, *Ms. L. v. U.S Immigration & Customs Enf't*, 331 F.R.D. 529, 533 (S.D. Cal. 2018) (certifying nationwide class of migrant parents unlawfully separated from their children).

Many such cases have involved Rule 23(b)(2) classes of immigrant children.  *See, e.g.*, *J.D.*, 925 F.3d at 1312; *O.A.*, 404 F. Supp. 3d at 154-60; *Ramirez*, 338 F. Supp. 3d at 47-49; *R.I.L-R*, 80 F. Supp. 3d at 182; *see also, e.g.*, *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 617 (S.D.N.Y. 2018) (certifying class of noncitizen minors in secure ORR custody in New York area); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1202 (N.D. Cal. 2017) (certifying class of noncitizen minors re-arrested by DHS on basis of gang allegations), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

## I.     THE PROPOSED CLASS SATISFIES RULE 23(a)'S REQUIREMENTS

### A.  The Proposed Class is Numerous.

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Joinder does not have to be impossible—instead, [the] plaintiff must show 'only that the difficulty or inconvenience of joining all members of the class

make use of the class action appropriate.'" *N.S. v. Hughes*, __ F.R.D. __, No. 1:20-CV-101-RCL, 2020 WL 2219441, at *11 (D.D.C. May 7, 2020) (quoting *DL v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013)), *reconsideration denied*, 2020 WL 4260739 (D.D.C. July 24, 2020).  Courts in this District "have observed that a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007)). However, "[t]here is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *Id.* (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)); *accord, e.g.*, *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo* ("*Afghan & Iraqi Allies*"), 334 F.R.D. 449, 458 (D.D.C. 2020).  Moreover, "classes including future claimants generally meet the numerosity requirement due to the 'impracticality of counting such class members, much less joining them.'" *J.D.*, 925 F.3d at 1322 (quoting 1 Rubenstein, Newberg on Class Actions § 3:15).  "This is especially true when plaintiff seeks injunctive relief." *N.S.*, 2020 WL 2219441, at *11.

"The numerosity requirement takes into account 'financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.'" *Id.* (quoting *DL*, 302 F.R.D. at 11); *see also Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 80 (D.D.C. 2015) ("The additional factors that courts consider in assessing the practicability of joinder include: (1) 'judicial economy arising from avoidance of a multiplicity of actions'; (2) 'geographic dispersion of class members'; (3) 'size of individual claims'; (4) 'financial resources of class members'; and (5) 'the ability of claimants to institute individual suits.'") (quoting Newberg on Class Actions § 3:12 (5th ed. 2014)).  The D.C. Circuit has indicated that such "non-numerical considerations" affecting

children in government custody—including their dispersion across different facilities, the fluidity

of their custody, and their limited resources—favor certification. *J.D.*, 925 F.3d at 1323.

Here, numerosity is easily satisfied for several reasons. First, Defendants' own statistics

show that at any given moment, dozens or hundreds of children are detained awaiting expulsion

under the Title 42 Process. Kang Decl., Exs. A-C. CBP Chief Operating Officer Mark Morgan

confirmed on June 25 that the vast majority of arriving unaccompanied children are subjected to

the Title 42 Process, and approximately 2,000 children were expelled pursuant to the Process in

its first three months. *See Hearing on CBP Oversight*, *supra*, at 1:10:09, 1:47:02-:10. Other public

reports confirm that every month, dozens or hundreds of children are held in hotels pending

expulsion pursuant to Title 42, while still more await deportation in CBP facilities near the border.

Interim Report by Independent Monitor, *Flores v. Barr*, No. 85-cv-04544 (C.D. Cal July 22, 2020),

ECF No. 873 at 8. Undersigned counsel and other immigration lawyers have also advocated for

dozens of unaccompanied children subject to the Title 42 Process. Kang Decl., ¶¶ 5-12.

Moreover, because the class includes future members who *will* be subjected to the Title 42

Process, and because Defendants have extended the Process indefinitely, 85 Fed. Reg. 31,503, the

class is larger than the number of children subject to the Process at any given time. *See J.D.*, 925

F.3d at 1322. The presence of such future class members renders joinder inherently impractical,

thereby satisfying the purpose behind the numerosity requirement. *See, e.g.*, *N.S.*, 2020 WL

2219441, at *12 (finding numerosity in part because "Defendant admits that the challenged

practice is ongoing, but those who will be arrested for suspected civil immigration violations in

the future cannot be joined at this stage"); *DL*, 302 F.R.D. at 11 (certifying class in part because

suit sought "prospective relief for future class members, whose identities are currently unknown

and who are therefore impossible to join").

Second, joinder is impracticable because class members—who are all unaccompanied children—are typically held only for a matter of days with limited access to the outside world and potential counsel, in unknown locations throughout the United States.  *See* Complaint; *see also* *J.D.*, 925 F.3d at 1323 (stating that joinder may be impracticable in light of "fluidity" of unaccompanied children's custody, "the dispersion of class members across the country, and their limited resources"); *see also, e.g.*, *Ramirez*, 338 F. Supp. 3d at 45 (finding "joinder impracticable" for class of detained, recently-aged-out unaccompanied children due to "lack of geographic proximity of the proposed members and the inherently transitory nature of the class"); *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999) (geographical dispersion relevant to impracticability of joinder); *Afghan & Iraqi Allies*, 334 F.R.D. at 459 (same); *Saravia*, 280 F. Supp. 3d at 1203 (finding joinder impracticable because minors "are frequently held in detention far from the location . . . where they would presumably have improved access to the assistance of their sponsors or any existing counsel").

Third, Defendants have exhibited a pattern of seeking to "moot" the limited number of children who, despite these obstacles, manage to retain legal representation—which has to date avoided precedential resolution of the legality of the Title 42 Process.  As described above and further in Plaintiff's declarations, on rare occasions a child subject to the Title 42 Process has reached a relative, who in turn was able to contact an immigration lawyer.  Some of those immigration lawyers have been able to reach undersigned Plaintiff's counsel here before the child is deported.  Plaintiff's counsel has taken each such case to Defendants, before seeking emergency relief.  In response, Defendants have voluntarily taken each unaccompanied child still in the country out of the Title 42 Process.  These litigation tactics demonstrate that the class action device would facilitate judicial review of the legality of the Title 42 Process.

### B.  The Class Presents Common Questions of Law and Fact.

To satisfy commonality, Plaintiff must show that "there are questions of law or facts common to the class." Fed. R. Civ. P. 23(a)(2).  At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  "[P]laintiffs must bridge the 'gap' between individual claims of harm and the 'existence of a class of persons who have suffered the same injury as that individual.'" *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014) (quoting *Wal-Mart*, 564 U.S. at 352-53).  "[W]here plaintiffs allege widespread wrongdoing by a defendant . . . a uniform policy or practice that affects all class members bridges the gap." *Id.* (some internal quotation marks omitted) (internal quotation marks omitted).  Thus, "commonality is satisfied where there is 'a uniform policy or practice that affects all class members.'" *R.I.L-R*, 80 F. Supp. 3d at 181 (quoting *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)).  Such suits "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Wright, Miller & Kane, Federal Practice & Procedure § 1763 (3d ed. 2005).  Some cases "may involve many common issues that together provide a resolution, but 'even a single common question will do.'" *Coleman*, 306 F.R.D. at 82 (quoting *Wal-Mart*, 564 U.S. at 359).

Plaintiff's lawsuit raises numerous legal questions common to the proposed class.  All class members are similarly situated, in that they are all unaccompanied children entitled to special protections under this country's immigration laws, including the TVPRA, and the government's position in other litigation concerning the Title 42 Process has been that individuals subject to that Process are categorically not entitled to those protections.  *See* Defs.' Opp'n to Pls.' Emergency Mot. for TRO at 23-31, *J.B.B.C. v. Wolf*, No. 20-CV-1509-CJN, ECF No. 28.  Their claims present

shared legal questions, including: whether Title 42 authorizes the deportation of individuals, like Plaintiff and proposed class members; and whether, even assuming Title 42 somehow could be construed to authorize deportations, it overrides the later-enacted immigration statutes, including those protecting children.  The APA claim also raises common legal issues, including whether Defendants have provided a reasoned explanation for their failure to exempt unaccompanied children from the Title 42 Process, and whether Defendants considered multiple important aspects of the problem.

Any one of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard.  *See Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 118 (D.D.C. 2017) (even a single common issue will do); *Coleman*, 306 F.R.D. at 82 (same); *Thorpe*, 303 F.R.D. at 145 (same).

Plaintiff and proposed class members also share a common core of facts: all are minors who came (or will come) to the United States unaccompanied and were subsequently taken into government custody; all are or will be subjected to the Title 42 Process; and none are afforded the procedures provided under the immigration laws designed to ensure their safety and protection. Plaintiff and proposed class members thus "have suffered the same injury"—the threat of unlawful deportation in violation of the specific protections described above.  *Wal-Mart*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 157).  And that common injury is clearly "capable of classwide resolution."  *Id.*  Should the Court agree that Defendants' Title 42 Process violates the immigration statutes and the APA, all who fall within the class will benefit from the requested relief: an injunction preventing Defendants from expelling unaccompanied minors under the Title 42 Process.  Thus, a common answer as to the legality of the challenged policies and practices will

"drive the resolution of the litigation." *Ramirez*, 338 F. Supp. 3d at 45 (quoting *Wal-Mart*, 564 U.S. at 350).

Significantly, moreover, courts in this Circuit have made clear that "if there is a 'single' common question, 'factual variations among the class members will not defeat the commonality requirement.'" *Damus*, 313 F. Supp. 3d at 332 (quoting *Hardy v. District of Columbia*, 283 F.R.D. 20, 24 (D.D.C. 2012)); *accord Nio*, 323 F.R.D. at 32. Any factual differences that may exist among the proposed class members are not significantly material to their claims, which challenge Defendants' Title 42 Process as ultra vires and in violation of the immigration statues and the APA. *See J.D.*, 925 F.3d at 1321 ("The government notes the existence of certain factual variations among the class members—namely, their age, maturity, stage of pregnancy, mental health, length of sponsorship search, and ability to return to country of origin. But the class members assert an entitlement to relief that is entirely unaffected by the myriad factual differences noted by the government.") (internal citation omitted).

### C. Plaintiff's Claims are Typical of Class Members' Claims.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is concerned with whether 'the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate.'" *Coleman*, 306 F.R.D. at 83 (quoting *Wal-Mart*, 564 U.S. at 349). "While commonality requires a showing that the *members* of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the *representatives* of the class suffered a similar injury from the same course of conduct." *Bynum v. District of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003) (emphasis in original). "A class representative satisfies the typicality requirement if the representative's claims are based on the same legal theory

as the claims of the other class members and her injuries arise from the same course of conduct that gives rise to the other class members' claims." *Coleman*, 306 F.R.D. at 83 (internal quotation marks omitted).

Plaintiff's claims are typical of the claims of the proposed class, for largely the same reasons that the class presents common questions of law and fact. Each proposed class member faces the same injury (being subjected to unlawful expulsion), based on the same government practice (the Title 42 Process), which is unlawful as to the entire class because it is ultra vires and violates the immigration laws and the APA. Moreover, as with commonality, any factual differences between Plaintiff and proposed class members are not material enough to defeat typicality. *See Bynum*, 214 F.R.D. at 34-35 ("Factual variations between the claims of class representatives and the claims of other class members claims do not negate typicality. . . . Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims."); *see also, e.g.*, *Afghan & Iraqi Allies*, 334 F.R.D. at 461 ("The differences between the named Plaintiffs and the class members that Defendants highlight (applicants who are at different steps in the process and who are considered high-risk), do not undermine the relevant shared characteristics between the named Plaintiffs and the class as a whole.")

### D.  Plaintiff and Plaintiff's Counsel Will Adequately Protect the Interests of the Proposed Class.

Rule 23(a)(4) requires that "[t]he representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation imposes two criteria on plaintiffs seeking to represent a class: '(1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the

representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'"   *Ramirez*, 338 F. Supp. 3d at 47 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

Plaintiff, through his Next Friend, will fairly and adequately protect the interests of the proposed class, and therefore is an adequate class representative.  Plaintiff does not seek any unique or additional benefit from this litigation that may make his interests different from or adverse to those of absent class members.  Instead, Plaintiff's aim is to secure injunctive relief that will protect himself and the entire class from the Defendants' challenged policy and enjoin the Defendants from further violations.  Nor does Plaintiff seek financial gain at the cost of absent class members' rights.  Accordingly, Plaintiff lacks any antagonism with the class, his interests align squarely with the other proposed class members, and no collusion is present.

Here, proposed Lead Class Counsel are attorneys from the ACLU Immigrants' Rights Project, who collectively have extensive and diverse experience in complex immigration cases and class action litigation.  *See* Kang Decl., ¶¶ 13-33.  Proposed Class Counsel have been appointed class counsel in a number of successful class action cases concerning the rights of noncitizens (including minors).  *See, e.g., Damus*, 313 F. Supp. 3d at 331; *Ms. L.*, 331 F.R.D. at 540-41; *Saravia*, 280 F. Supp. 3d at 1202, 1204-05; *R.I.L-R*, 80 F. Supp. 3d at 181; *Franco-Gonzalez v. Napolitano*, No. 10-CV-2211, 2011 WL 11705815, at *13-14 (C.D. Cal. Nov. 21, 2011).

Lead Class Counsel are also uniquely positioned to litigate on behalf of the proposed class here, due to their prior experience litigating cases on behalf of noncitizen children subject to the Title 42 Process.  Plaintiff's counsel has already won a preliminary injunction against the deportation of one such child—the only legal ruling regarding the legality of the Title 42 Process

15

to date—and have secured similar relief without full litigation for dozens of children and families subject to the Title 42 Process.  Kang Decl., ¶¶ 6, 12 & Ex. D.[3]

## II.   THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS

In addition to satisfying the four requirements of Rule 23(a), a class must also come within one of the subsections of Rule 23(b).  Certification of a class under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) "impos[es] two requirements: (1) that defendant's actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class."  *Bynum*, 214 F.R.D. at 37.  "The D.C. Circuit has explained that the purpose of Rule 23(b)(2) is to 'avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief.'"  *Ramirez*, 338 F. Supp. 3d at 48 (quoting *DL v District of Columbia*, 860 F.3d 713, 726 ((D.C. Cir. 2017)).  The Circuit has also specifically explained that another "principal purpose of Rule 23(b)(2) class actions is to enable class resolution of civil-rights claims alleging classwide deprivations of protected rights."  *J.D.*, 925 F.3d at 1314.  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct

---

[3] Multiple circuits have rejected the view that Rule 23 contains a separate ascertainability requirement.  *See, e.g.*, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017) (rejecting proposition that Rule 23 requires separate showing that there is "administratively feasible way to determine who is in the class"); *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) (holding that ascertainability showing is not required to certify Rule 23(b)(2) class seeking only declaratory and injunctive relief); *see also J.D.*, 925 F.3d at 1320 (observing that this question remains open in the D.C. Circuit).  Even assuming such a requirement exists, the proposed class here is readily ascertainable because membership in the class is defined by clear and objective criteria, and identifying class members is administratively feasible.

is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* at 1314-15 (quoting *Wal-Mart*, 564 U.S. at 360).

Rule 23(b)(2)'s requirements are plainly met here.  Plaintiff asks the Court to enjoin Defendants' policy—common to all class members—of expelling unaccompanied children under the Title 42 Process without affording them the procedures provided under the immigration statutes.  This includes Defendants' failure to transfer Plaintiff and class members to ORR care, as the TVPRA mandates.  A single injunction would protect all class members from this same practice. *See, e.g.*, *id.* at 1315 (affirming class of pregnant unaccompanied children in government custody where "the class . . . can encompass anyone whose right to terminate her pregnancy is allegedly infringed by the government's policy"); *Nio*, 323 F.R.D. at 34-35 (certifying Rule 23(b)(2) class where "plaintiffs are only challenging the application of standardized [immigration] policies that generally apply to the class" and "[e]njoining these broad policies or declaring them unlawful is appropriate relief under Rule 23(b)(2)").

This relief would benefit Plaintiff as well as all members of the proposed class in the same fashion. *See Ramirez*, 338 F. Supp. 3d at 48 (holding Rule 23(b)(2) requirements satisfied where plaintiffs "challenged [DHS's] practice of failing to comply with [the TVPRA]" and sought "relief requiring only such compliance" as to all class members).  Because Plaintiff and the proposed class members are all subject to the same statutory violations due to Defendants' challenged practice, and because they seek singular injunctive and corresponding declaratory relief that remedy those injuries, certification under Rule 23(b)(2) is proper.

## CONCLUSION

The Court should certify the proposed Class under Rule 23(a) and 23(b)(2); appoint Plaintiff as Class Representative; and appoint the Plaintiff's Counsel from the ACLU Immigrants' Rights Project as Lead Class Counsel, and others as Class Counsel.

Dated: August 14, 2020

Respectfully submitted,

/s/ *Celso Perez*

Stephen B. Kang*
Cody Wofsy*
Morgan Russell*
Adrienne Harrold*
American Civil Liberties Union Foundation,
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0770

Andre Segura
Kathryn Huddleston
Rochelle Garza
Brantley Shaw Drake
American Civil Liberties Union Foundation
of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, Texas 77007
Tel. (713) 942-8146

*Pro hac vice application forthcoming*

Lee Gelernt*
Daniel A. Galindo*
Celso J. Perez (D.C. Bar No. 1034959)
American Civil Liberties Union Foundation,
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2600

Karla M. Vargas*
Efren C. Olivares*
Texas Civil Rights Project
1017 W. Hackberry Ave.
Alamo, Texas 78516
Tel: (956) 787-8171

Robert Silverman*
Oxfam America
Boston, MA 02115, Suite 500
Tel: (617) 482-1211

Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation of
the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
Tel: (202) 457-0800

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2020, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system.  I will cause a copy of this document to be served on Defendants in this case.

By: /s/ *Celso Perez*
CELSO J. PEREZ