IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| P.J.E.S., A MINOR CHILD, by and through his father and NEXT FRIEND, Mario Escobar Francisco, on behalf of himself and others similarly situated,<br><br>            Plaintiff,<br><br>   v.<br><br>CHAD WOLF, Acting Secretary of Homeland Security, et al.,<br><br>            Defendants. | Civil Docket No. 1:20-cv-02245-EGS |

**DEFENDANTS' MOTION TO RECONSIDER THE COURT'S DENIAL OF
A STAY OF PRELIMINARY INJUNCTION PENDING APPEAL**

Pursuant to Federal Rule of Civil Procedure 54(b), Defendants request that the Court reconsider its denial of a stay of its preliminary injunction issued on November 18, 2020. The grounds for this motion are set forth in the accompanying memorandum of law and supporting declarations.

Pursuant to Local Civil Rule 7(m), counsel for Defendants has conferred with counsel for Plaintiff. Plaintiff opposes the motion.

Dated: November 25, 2020

Respectfully submitted,

                                                      JEFFREY BOSSERT CLARK
                                                      Acting Assistant Attorney General

                                                      JOHN V. COGHLAN
                                                      Deputy Assistant Attorney General

/s/ *Jean Lin*
JEAN LIN (NY 4074530)
Special Litigation Counsel
KEVIN SNELL (NY 5225669)
TANYA SENANAYAKE (DC Bar 1006218)
Trial Attorneys
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 514-3716
Jean.Lin@usdoj.gov
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| P.J.E.S., A MINOR CHILD, by and through his father and NEXT FRIEND, Mario Escobar Francisco, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHAD WOLF, Acting Secretary of Homeland Security, et al.,<br><br>Defendants. | Civil Docket No. 1:20-cv-02245-EGS |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO RECONSIDER THE COURT'S DENIAL OF A STAY OF PRELIMINARY INJUNCTION PENDING APPEAL

**INTRODUCTION**

Just last week, the Centers for Disease Control and Prevention ("CDC") advised the American public that "the safest way to celebrate Thanksgiving is to celebrate at home with the people you live with."[1] And even for those thinking they might opt not to heed that advice, the CDC suggested that travelers first carefully consider a series of "important questions," including whether "hospitals in your community or your destination [are] overwhelmed with patients who have COVID-19" before choosing to travel. *Id.* Notably, our southern border's hospitals are stressed to the breaking point. For the same prophylactic reasons that logically impelled the CDC to issue this health warning, Defendants respectfully renew their request that the Court stay its preliminary injunction issued on November 18, 2020, which enjoined Defendants from expelling class members under an order issued by the Director of the CDC ("CDC Order").

The CDC Order at issue temporarily prohibits the introduction of certain aliens traveling from Canada and Mexico into the United States because of the serious danger they will introduce COVID-19 into border facilities and the interior of the country. Since Defendants filed their opposition to Plaintiff's motion for preliminary injunction in September, the public health crisis presented by COVID-19 has, by multiple measures, become more severe (and could intensify further with the anticipated travel during the approaching holidays), materially exacerbating the public health effects of the injunction. Because the injunction likely will have an irreversible impact on public health, including by further straining hospital capacity at the border and risking the detrimental cascading effect of moving potentially infected minors through airports in order to transport them to care facilities, equity now counsels even more strongly in favor of staying the injunction pending appeal.[2] Given the urgency of the public health crisis, Defendants intend to

---

[1] CDC, Guidance, https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/holidays/thanksgiving.html (last visited Nov. 24, 2020).

[2] Defendants are not seeking reconsideration of this Court's order granting Plaintiff's motion for a preliminary injunction, ECF No. 15, or provisionally granting Plaintiff's motion to certify a class, ECF No. 2. *See* Order, ECF No. 79.

seek a stay of the injunction from the Court of Appeals at 5 p.m. on December 3, 2020, if this Court does not issue a stay before then.

As demonstrated by the attached declarations from the Department of Health and Human Services' (1) Office of the Assistant Secretary for Preparedness and Response and (2) Office of Refugee Resettlement ("ORR"), as well as the Department of Homeland Security's (3) U.S. Customs and Border Protection ("CBP") and (4) U.S. Immigration and Customs Enforcement ("ICE"), since September, the public health crisis in the southern border States (and indeed in the interior of the United States) has intensified, such that enjoining the CDC Order at this juncture will seriously interfere with ongoing efforts to combat COVID-19.

*First*, the pandemic has severely impacted the medical systems and hospitals of the border States in the last few months such that any increase in the transfer of class members into those States' health care systems is likely to cause irreparable harm to the public. *Second*, CBP officers' and agents' encounters with unaccompanied minors covered by the CDC order has increased drastically, making it more likely that U.S. border facilities will need to hold class members in *congregate* settings, further increasing the risk of transmission of COVID-19 to those in the border facilities (including both other aliens held in congregate settings and the CBP personnel who must supervise them) and from there to the U.S. population. *Third*, if the Court declines to stay the injunction, the Government expects the capacity in its ORR facilities along the southwestern border to be exhausted by December 12, 2020, and will need to transport hundreds of potentially infected minors in its care into the interior of the United States, potentially further spreading COVID-19.

In short, this Court's injunction prohibiting the expulsion of class members under the CDC Order (or Title 42 process) means that before being transferred to ORR, class members will first be held in congregate settings at border facilities, which were not designed for, and are not equipped to, quarantine, isolate, or enable social distancing. This will not only dramatically increase the risk of exposure to COVID-19 for both detained aliens and for CBP personnel (thereby risking the continued effectiveness of CBP border operations if personnel must be removed from

the line of duty due to illness or for quarantine after exposure), but also is likely to further burden already overtaxed local healthcare systems—a particularly harmful prospect given escalating rates of infection and hospitalization in the border States in the last two months. In view of the injunction's potentially significant impact on public health, Defendants respectfully request that the Court stay the injunction pending appeal.

## BACKGROUND

Defendants have previously explained in detail the factual, statutory, and regulatory background of this case, which Defendants incorporate by reference herein. *See* Defs.' Combined Opp'n to Pl.'s Motion for Class Certification and for Classwide Prelim. Inj., ECF No. 42, at 16-26, ECF No. 43 (unredacted) ("PI Opp'n"); *see also* Memorandum Opinion, ECF No. 80, at 2-11.[3] Defendants will provide only a brief summary of the procedural history here.

Plaintiff filed this action on behalf of a putative class seeking to invalidate an order issued by the CDC Director pursuant to 42 U.S.C. § 265 and an interim final rule. *See* Interim Final Rule, Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into The United States From Designated Foreign Countries of Places for Public Health Purposes, 85 Fed. Reg. 16,559-01 (Mar. 24, 2020), ECF No. 42-2. That Order temporarily prohibits the introduction of certain aliens traveling from Canada and Mexico into the United States because of the serious danger of their introduction of COVID-19 into border facilities and from there to the interior of the country. *See* Notice of Order Under Sections 362 & 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where A Communicable Disease Exists, 85 Fed. Reg. 17,060-02 (Mar. 26, 2020) ["CDC Order"] at 16-17, ECF No. 42-1. The CDC Director determined that ports of entry and Border Patrol stations at or near the northern and southern borders were not designed, and are not equipped, to effectively mitigate the risks presented by COVID-19, *id.* at 15, and that those facilities largely lack sufficient capacity to

---

[3] Consistent with the Court's Memorandum Opinion, Defendants cite to the page numbers assigned by the CM/ECF system. *See* Mem. Op. at 2 n.1.

provide medical services for aliens who test positive for COVID-19, *id.*; *see also* Final Rule, 85 Fed. Reg. 56,424, 56,433 (Sept. 11, 2020). DHS must therefore rely on local and regional hospitals and emergency medical resources when detainees become ill or are injured, CDC Order at 16, and experience has proven that a surge in the number of COVID-19 cases could overtax border States' healthcare systems, *see* Final Rule, 85 Fed. Reg. at 56,439-40 (discussing Arizona's experience). The CDC Order thus requires that all aliens covered by the Order be returned as rapidly as possible, and with as little time spent in congregate settings as is feasible, to the country from which they entered the United States, their country of origin, or to another location, as practicable and appropriate. CDC Order at 17.

After Plaintiff moved to preliminarily enjoin the CDC Order (or the Title 42 process) and to certify a class, this Court referred this case to Magistrate Judge G. Michael Harvey. On September 8, 2020, Defendants opposed the motions. *See* ECF No. 42. Magistrate Judge Harvey issued a report and recommendation on September 25, 2020, recommending that the Court grant both motions. *See* Report & Recommendation at 49-50, ECF No. 65. Defendants filed their objections shortly thereafter, ECF Nos. 69, 75.

This Court adopted the report and recommendation on November 18, 2020. *See* Order, ECF No. 79; Memorandum Opinion, ECF No. 80. In doing so, this Court provisionally certified a class "consisting of all unaccompanied noncitizen children who (1) are or will be detained in U.S. government custody in the United States, and (2) are or will be subjected to expulsion from the United States under the CDC Order Process, whether pursuant to an Order issued by the Director of the Centers for Disease Control and Prevention under the authority granted by the Interim Final Rule, 85 Fed. Reg. 16559-01, or the Final Rule, 85 Fed. Reg. 56,424-01," Order at 1-2, ECF No. 79, the latter of which HHS promulgated in the midst of briefing before Magistrate Judge Harvey. Further, the Court ordered "that Defendants, their agents, and any person acting in concert with them are enjoined from expelling the Class Members from the United States under the CDC Order Process, whether pursuant to an Order issued by the Director of the Centers for

4

Disease Control and Prevention under the authority granted by the Interim Final Rule, 85 Fed. Reg. 16559-01, or the Final Rule, 85 Fed. Reg. 56,424-01." Order at 2, ECF No. 79.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b) allows for the court to alter an order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Motions for reconsideration under Rule 54(b) may be granted "as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011). In this Circuit, "'courts have more flexibility in applying Rule 54(b)' than in determining whether reconsideration is appropriate" with regard to final judgments. *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004). "[T]here must be some 'good reason' to reconsider an issue already litigated by the parties and decided by the court, such as new information, a misunderstanding, or a clear error." *Montgomery v. IRS*, 356 F. Supp. 3d 74, 79 (D.D.C. 2019). Additionally, "the party moving to reconsider carries the burden of proving that some harm would accompany a denial of the motion to reconsider." *Bryant v. CIA*, 818 F. Supp. 2d 153, 156 (D.D.C. 2011). In deciding a Rule 54(b) motion, the court may consider, among other things, whether "a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court.'" *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (quoting *Cobell*, 224 F.R.D. at 272) (alteration in original). Ultimately, "the 'as justice requires' standard amounts to determining 'whether reconsideration is necessary under the relevant circumstances.'" *Id.* (quoting *Cobell*, 224 F.R.D. at 272).

As discussed below, Defendants amply meet the above standard given recent trends in the COVID-19 pandemic, a nationwide and worldwide public health crisis unprecedented by any measure.

## ARGUMENT

This Court's preliminary injunction blocks the Government from implementing a CDC Order issued to protect public health in the midst of an unprecedented pandemic that has already infected millions and killed hundreds of thousands in the United States. Moreover, the injunction

5

takes effect at a perilous time when COVID-19 presents new challenges at the border arising since the Court considered the issue of a stay based on facts as they stood in September. As explained by the agencies responsible for addressing the public health emergency and the strains it places on our healthcare systems, for taking care of alien minors in government custody, and for protecting the Nation's borders, serious public health developments demonstrate the potentially dire consequences of failing to stay the injunction.

**I.   THE PUBLIC HEALTH CHALLENGES POSED BY THE PANDEMIC HAVE BECOME INCREASINGLY SEVERE IN RECENT MONTHS.**

As explained by Dr. Robert Kadlec, the Assistant Secretary for Preparedness and Response, at the Department of Health and Human Services (HHS), since September COVID-19 has been rapidly spreading throughout the United States, Declaration of Robert Kadlec, M.D. ("Kadlec Decl.") ¶ 14 (attached as Exh. A), and the overall percentage of visits to outpatient providers or emergency departments for COVID-like or influenza-like illness has been increasing, *id.* ¶ 16. While the situation has been serious since the pandemic began, it has become even more so in the last two months: more Americans are getting infected with COVID-19, more Americans are dying, and more are requiring hospitalization. *Id.* Uncontrolled community transmission is now occurring in wide swaths of the country, and COVID-19 infections have skyrocketed in the States along the southern border. *Id.* ¶ 17.

Border States have taken extraordinary measures to try to address the recent surge in COVID-19 cases. California, for example, has significantly rolled back its phased reopening plans: As of November 17, 2020, 94% of Californians live in counties where most nonessential indoor businesses are closed. *Id.* ¶ 30. New Mexico similarly re-imposed restrictions in November in response to the unprecedented spike in COVID-19 infections and the corresponding escalating strain on local healthcare systems. *Id.* ¶ 37. The State's residents have been instructed to remain at home with limited exceptions, and essential businesses have been severely restricted. *Id.* ¶ 38.

In light of the recent rapid spread of COVID-19, Dr. Kadlec cautioned that every effort must be made to reduce the strain on local healthcare systems. *Id.* ¶ 58. Whereas the CDC Director

6

has determined that the CDC Order has been effective in mitigating the spread of COVID-19, *see* Order Suspending the Right to Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 85 Fed. Reg. 65806 (Oct. 16, 2020, effective on Oct. 13, 2020) at 6-7;[4] Final Rule, 85 Fed. Reg. at 56,433, enjoining the CDC Order at this juncture would create or exacerbate conditions conducive to further COVID-19 outbreaks, *see* Kadlec Decl. ¶ 57.

The strain would not be limited to healthcare systems or the domestic population they serve. It would also place CBP operations at risk. CBP, the agency charged with the important responsibility for protecting the Nation's borders and ensuring the smooth flow of commerce, among other important missions, has experienced a more than 200 percent increase from September 2020 to October 2020 in employees testing positive for COVID-19, and November 2020 has already surpassed October's figures. *See* Declaration of Mark A. Morgan ("Morgan Decl.") ¶ 17 (attached as Exh. B); *see also id.* ¶ 26 (explaining that limiting the CDC Order would have grave consequences to public safety and national security). Tragically, CBP personnel have continued to die from COVID-19. *Compare* Final Rule 85 Fed. Reg. 56,434 (noting that ten CBP employees and a contractor had died from COVID-19 as of August 7, 2020), *with* Morgan Decl. ¶ 17 (explaining that 14 CBP employees and a contractor have died as a result of the virus). *See also* Declaration of Russell Hott ("Hott Decl.") ¶ 18 (attached as Exh. C) (six ICE Enforcement and Removal Operations "employees have died after contracting COVID-19 since the onset of the pandemic in February 2020").

## II. RECENT DEVELOPMENTS AT THE BORDER EXACERBATE THE POTENTIAL PUBLIC HEALTH EFFECTS OF THE INJUNCTION.

### A. The Number of Unaccompanied Minors Attempting to Cross the Southern Border Has Increased Dramatically.

The number of unaccompanied minors covered by the CDC Order that CBP has apprehended or encountered along the southern border has climbed dramatically. During the 72-

---

[4] *Available at* https://www.cdc.gov/coronavirus/downloads/10.13.2020-CDC-Order-Prohibiting-Introduction-of-Persons-FINAL-ALL-CLEAR-encrypted.pdf.

7

day period prior to September 8, 2020, when Defendants filed their opposition and request for a stay, there were 6,000 such encounters; that number swelled to 9,941 in the next 72-day period, constituting a 66 percent increase. *See* Morgan Decl. ¶ 5. During the same period, the Rio Grande Valley sector experienced a 109 percent increase, and the Tucson Sector a 78 percent increase. *Id.* And these increases are expected to continue, as CBP anticipates that its apprehensions of unaccompanied minors will increase by 50 percent within 120 days. *Id.* ¶ 6; *see also id.* ¶ 7 ("Based on my experience both as the Chief of the USBP and in my current role, I expect that the District Court Order will serve as a pull factor leading to additional numbers of class members apprehended and referred to ORR."). The increase in apprehensions of unaccompanied minors is consistent with the increase of CBP enforcement encounters generally, which have climbed in each of the last several months. For instance, whereas CBP encountered 17,106 aliens in April 2020, it encountered 57,674 in September and 69,237 in October. *Id.* ¶ 11. And encounters with aliens who test positive for COVID-19 increased rapidly through the summer, and now such encounters are a regular occurrence. *See id.* ¶ 16. This is no surprise, as Mexico continues to be hit hard by COVID-19 and has seen spikes in many of its states in recent weeks. Kadlec Decl. ¶ 42; *see also id.* ¶ 43 ("As of November 11, the highest rates of hospital occupancy can be found among the Mexican border states of Chihuahua, Coahuila, and Nuevo Leon.").

From a public health perspective, increased encounters are particularly dangerous given the dire public health situation along the southern border. Texas is experiencing a surge in COVID-19 hospitalizations, with hospitalizations increasing more than 75% since the beginning of October. Morgan Decl. ¶ 20. If these current trends continue, Dr. Kadlec expects that hospital systems in some localities in Texas could be overwhelmed. *See* Kadlec Decl. ¶ 20. The El Paso region has been particularly devastated, where the number of hospitalized COVID-19 patients has increased *nearly tenfold* since the start of September; *the region now has only 36 available ICU beds to serve a population of more than 880,000 people*. *Id.* ¶ 22. Arizona's healthcare system is similarly nearing capacity in terms of available in-patient and ICU hospital beds, with only 208 ICU beds left to care for new patients as of November 15. *Id.* ¶ 34. Pima County, Arizona had

340 available ICU beds on October 13, but that number dropped precipitously to only 29 by November 12. *Id*.

### B. The Office of Refugee Resettlement Now Faces Severe Capacity Limitations Due to the Spread of COVID-19 and Conditions at the Border.

The Office of Refugee Resettlement has been severely impacted by the recent increases in the number of referrals to ORR, increases in the number of minors who are already infected with COVID-19, and the increasing severity of public health conditions in States where ORR has extensive operations. If the CDC Order remains enjoined, ORR will face even greater challenges in accommodating the expected increases in referrals of covered minors. A stay of the injunction is vital to ensure that ORR's ability to provide safe environments to minors in its care is not compromised.

#### 1. The Worsening Pandemic and Increasing Numbers of Minors Referred to ORR Have Limited ORR Capacity.

Due to the public health measures recently put in place to address the evolving pandemic, ORR now has approximately 7,800 available beds for minors referred to its care. Declaration of ORR Acting Director Nicole Cubbage ("Cubbage Decl.") ¶ 5 (attached as Exh. D). That number represents a 40% reduction of ORR's approximately 13,000 beds across its entire network. As ORR's Acting Director Cubbage explained, a large number of its 13,000 beds cannot be safely filled given the COVID-19 infection prevention and containment protocols that are necessary to protect the minors in ORR's care. *Id*. Further, the majority of ORR's beds are located in the interior of the country, and utilizing them would require the transportation of hundreds of alien minors across the country, which, in turn, will expose those minors, ORR personnel, and the general public to further risk of COVID-19 infection. *Id*.

Exacerbating ORR's limited capacity is the recently increasing numbers of referrals of minors to ORR. While ORR had 39 referrals in May, *it received over 1,500 referrals in October*. *Id*. ¶ 14. Historically, ORR has experienced increases in referrals in the fall and winter months. *Id*. Additionally, other situational factors can lead to significant surges in the number of referrals

9

well above typical seasonal fluctuations. *Id*. These circumstances include the rapidly deteriorating economic and political conditions, natural disasters (such as the two recent devastating hurricanes in Central America), and major political and public health developments in the United States, such as the recent announcement of a forthcoming COVID-19 vaccine. *Id*. ORR anticipates that the confluence of these factors right now will likely cause a surge in the number of referrals to ORR in the coming weeks. *Id*. ¶ 15. Without a stay of the injunction, ORR will immediately experience an even greater increase in the number of daily referrals, based on recent trends of CBP encounters with unaccompanied minors. *Id*. ¶ 19. Acting Director Cubbage further estimates the number of referrals from DHS may increase to approximately 300 to 400 referrals per day in the near future as a result of the injunction. *Id*. ¶ 20.

Moreover, based on CBP's projections, ORR estimates that the capacity in its facilities along the southwestern border will be exhausted by January 7, 2021, with full nationwide capacity exhausted by February 6, 2021. *Id*. ¶ 21. And based on ORR's own internal projections, ORR estimates that the capacity in its facilities along the southwestern border may be exhausted by December 12, 2020, with full nationwide capacity exhausted on January 13, 2020. *Id*.

Particularly concerning is the drastically increasing percentage of minors referred to ORR who test positive with COVID-19 when they enter the ORR network. While a total of 838 minors have tested positive in the period starting at the beginning of the pandemic up until November 17, 2020, *679 of those minors tested positive upon entry into ORR care in the last three months*. *Id*. ¶ 16.

### 2. Recent Developments in Border States Where ORR Facilities Are Located Further Limit ORR Capacity.

The pandemic's increasingly severe effects on States at the southwestern border are likely to further diminish ORR capacity and to disrupt its operations. ORR has a large number of facilities in the border States that have experienced a significant resurgence of COVID-19 since September 2020. *See* Cubbage Decl. ¶ 23. Specifically, ORR operates 42 facilities in Texas, eight facilities in California, and 17 facilities in Arizona, representing approximately 8,128 beds, or 62%

10

of ORR's total capacity. *Id.* Many of these facilities, in turn, are located in counties close to the U.S.–Mexico border that have been particularly affected by the recent COVID-19 resurgence. *Id.* ¶ 24. For instance, 14 of ORR's 17 Arizona facilities are located in Maricopa County, which has experienced a total of 176,993 COVID-19 infections and 14,621 COVID-19-related hospitalizations. *Id.* And in Texas, where ORR operates 23 facilities located in counties on the U.S.–Mexico border, one such county recently reported 33,935 active cases and 1,111 hospitalizations, *leaving only 366 available hospital beds and 36 available ICU beds in an area home to over 880,000 people*. *Id.* ¶ 25.

Given that ORR facilities must rely on local hospitals and medical systems for emergency and other types of medical care, any minors in the care of ORR who need treatment in a hospital in a severely impacted area not only would be at risk of exposure to COVID-19, but would also further strain the local healthcare systems already struggling to meet the needs of the local population. *Id.* ¶ 26. Additionally, because travel has been restricted in many states because of widespread community transmission, the transportation of minors in ORR's care may be hindered by local health restrictions and protocols, and minors in some States may be subjected to additional quarantine and isolation periods upon arrival. *Id.* ¶ 11.

Further, increased community transmission in these States will have an impact on the personnel required to maintain ORR operations, which further reduces ORR capacity. *Id.* ¶ 27. In particular, ORR must engage in contact tracing when facility staff who interact with alien minors self-report exposure to or infection with COVID-19. *Id.* And while contact tracing is carried out, ORR must issue a stop-placement order for the affected facility until contact tracing is complete. *Id.* Due to mandatory staffing ratios, even a small number of absences reduces the number of referrals that can be placed in an affected facility. *Id.* Moreover, staff may be forced to take time off to quarantine following their transport of alien minors to other states/programs if the staff were to comply with States' potential re-imposition of quarantine requirements on interstate travelers. *Id.* ¶ 29. These situations are entirely unpredictable, and they can suddenly result in a significant reduction of ORR's capacity to receive referrals, *id.* ¶ 27, when ORR programs are already having

11

difficulty recruiting staff for shift work due to the perceived risk of exposure to COVID-19 in congregate care settings, *id.* ¶ 29. If the transfer of minors to ORR is impeded, these minors will remain in CBP facilities that are even less well equipped to house them in conditions suitable for the pandemic, placing CBP and ICE personnel, as well as local health systems, at even greater risk and compromising CBP's ability to effectively execute its border protection and other missions. Morgan Decl. ¶¶ 9, 12, 18, 22; *accord* Hott Decl. ¶¶ 17-18; Cubbage Decl. ¶ 13. In addition, in the event ORR's capacity is exhausted, the Office of the Assistant Secretary for Preparedness and Response will likely be called upon to assist ORR and DHS in managing an influx of unaccompanied minors, as well as the necessary medical staging or quarantining of such minors at a time when the agency is fully engaged in meeting the domestic needs of the COVID-19 response. Kadlec Decl. ¶ 50.

> **3. Absent a Stay, ORR May Need to Transport Minors to Facilities Further Inland, Posing Public Health Risk to the U.S. Population in the Interior.**

To minimize the need to transport infected or potentially infected minors further into the interior of the United States, ORR has implemented a medical staging plan that focuses on initially placing new referrals into ORR facilities located near the U.S. southwestern border. Cubbage Decl. ¶ 17. The movement of potentially infected minors further into the U.S. can be harmful. This is so because the mitigation measures for ground and air transportation of minors to ORR facilities are limited. Hott Decl. ¶¶ 12, 16. And in light of the large number of cases transferred to ORR, ICE is likely to resort to commercial air travel to transport minors for placement at ORR facilities further inland, increasing risk to the general public. *Id.* ¶¶ 12, 14, 16; *see also id.* ¶¶ 12-20 (explaining the complicated logistics of ICE's role in transporting alien minors). To illustrate the risk of transmitting COVID-19 in similar circumstances, nearly 12% of juvenile aliens who were processed pursuant to the CDC Order and returned to Guatemala on a recent flight later tested positive for COVID-19. *See id.* ¶ 15.

Yet this movement of minors in the care of ORR to facilities that are further inland is very likely in the absence of a stay. As of November 16, 2020, ORR had 2,305 minors in its care. *See* Cubbage Decl. ¶ 18. Approximately 72% of these minors are currently housed in ORR facilities along the southwestern border. *Id*. Approximately 40% of the total facility capacity at the southwestern border has already been filled, and some of ORR's southwestern border facilities are already nearing maximum capacity. *Id*. For instance, the Corpus Christi area facilities are now at 86% capacity. *Id*.

Once the staging capacity at the southwestern border facilities is exhausted, ORR will need to transport incoming minors further into the interior of the country. *Id.* ¶¶ 5, 10. *This will require minors to be transported long distances on commercial and charter flights, which risks exposing all involved to COVID-19 and could exacerbate the domestic public health crisis. Id*. ¶¶ 5, 10.

ORR expects to face a dire capacity shortage in the event that a significant number of infections develop among minors in its care, or if there is a surge in the number of referrals. *Id*. ¶ 18. In either case, ORR will need to move incoming minors to facilities that are further inland. *Id*. This poses an avoidable risk of harm to the U.S. population that can compound the risks that the U.S. is already facing.

## CONCLUSION

In sum, the pandemic's recent surge has severely strained the healthcare systems along the southern border, while encounters with unaccompanied minors covered by the CDC Order have increased dramatically and ORR is expected to reach capacity soon. Prohibiting the expulsion of class members under the CDC Order at this critical juncture deprives the Government of an important tool to help address the public health emergency, and increases the risk of transmitting COVID-19 into the United States, further overtaxing our Nation's already limited healthcare resources. This Court should reconsider its denial of Defendants' request for a stay of injunction pending appeal.

Dated: November 25, 2020

Respectfully submitted,

                                      JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

JOHN V. COGHLAN
Deputy Assistant Attorney General

/s/ *Jean Lin*
JEAN LIN (NY 4074530)
Special Litigation Counsel
KEVIN SNELL (NY 5225669)
TANYA SENANAYAKE (DC Bar 1006218)
Trial Attorneys
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 514-3716
Jean.Lin@usdoj.gov
*Attorneys for Defendants*