UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| P.J.E.S., A MINOR CHILD, by and through his father and NEXT FRIEND, Mario Escobar Francisco, on behalf of himself and others similarly situated,<br>     Plaintiff,<br> v.<br><br>CHAD WOLF, Acting Secretary of Homeland Security, et al.,<br><br>     Defendants. | Civil Docket No. 1:20-cv-02245-EGS |

**DECLARATION OF JEFFREY D. LYNCH**

  I, Jeffrey D. Lynch, declare the following under 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

**I. Personal Background**

  1. I am currently employed as the Deputy Assistant Director (DAD) for the International Operations Division (IOD) within the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO). I have been employed with ICE and the former Immigration and Naturalization Service since 1992. I began my career as an Immigration Inspector in the Honolulu District Office, and over the years served as a Deportation Officer in York, Pennsylvania, Deputy Assistant Regional Director in Dallas, Texas, Supervisory Detention and Deportation Officer and Assistant Field Office Director in Omaha, Nebraska, Deputy Field Office Director in Denver, Colorado, and Field Office Director in Denver, Colorado before transferring to ERO Headquarters (HQ) in Washington, D.C. in March 2019.

2. ICE is charged with enforcement of more than 400 federal statutes, and its mission is to protect the United States from the cross-border crime and illegal immigration that threaten national security and public safety through enforcement of the federal laws governing border control, customs, trade, and immigration. To carry out this mission, ICE focuses on enforcing federal immigration laws, preventing terrorism, and combating transnational criminal threats. As an operational program of ICE, ERO is responsible for the planning, management, and direction of broad programs relating to the supervision, detention, and removal of aliens who are removable from the United States under the U.S. immigration laws. ERO officers have also been delegated authority as customs officers under 19 U.S.C. § 1401(i).

3. ERO's mission is to identify, arrest, and remove aliens who present a danger to national security or are a risk to public safety, as well as those who enter the United States illegally or otherwise undermine the integrity of our immigration laws and our border control efforts. The ICE ERO Removal Division is one of six ERO HQ divisions and is responsible for executing the removal of aliens with final removal orders using commercial or charter aircraft. The Removal Division is comprised of IOD which manages 25 internationally deployed Assistant Attachés for Removal at embassies and consulates worldwide, the ICE Air Operations Division, which manages the contracting and operations of all ICE aircraft to affect removals, and the Removal Management Division, which supports ERO field offices nationwide in the coordination of removals through coordination within the agency, as well as interagency stakeholders, foreign embassies and consulates, and international networks. The Removal Division has also provided assistance in executing the public health orders issued by the Director of the Centers for Disease Control and Prevention pursuant to regulations promulgated under 42 U.S.C. §§ 265 and 268 (Title 42 Process), *see, e.g.*, 85 Fed. Reg. 17060-02 (Mar. 26, 2020), by

transporting some aliens to whom these orders apply out of the United States, referred to in this context as "expulsion."

4. I am familiar with the Memorandum Opinion and Order in *P.J.E.S. v. Wolf,* No. 20-2245 (D.D.C. Nov. 18, 2020), ECF Nos. 79, 80, issued at 10:02am EST on November 18, 2020, preliminarily enjoining the expulsion of unaccompanied noncitizen children pursuant to the Title 42 Process. I submit this declaration to explain the facts and circumstances surrounding the expulsion of approximately 35 unaccompanied minors to Guatemala on the day the preliminary injunction was issued. The information in this declaration is based upon my personal knowledge and experience as a law enforcement officer and on information provided to me in my official capacity.

**II.     November 18, 2020 Flight to Guatemala and Knowledge of the Injunction**

5. On November 12, 2020, ICE scheduled a flight to depart the United States for Guatemala from Alexandria, Louisiana at 10:05am EST on November 18, 2020, for the purpose of transporting aliens for removal under Title 8 of the U.S. Code and others for expulsion under the Title 42 Process. The manifest, which includes the individuals scheduled for the flight, was finalized on November 16, 2020. The flight departed at 10:12am EST, which was 10 minutes after the injunction was issued. Among those on the flight who were processed for expulsion under Title 42 were 35 individuals believed at the time to be unaccompanied minors. Also on the flight were 29 adult individuals being transported for removal under Title 8.

6. I understand that the U.S. Department of Justice notified DHS of the order at approximately 10:26am EST, after the flight had departed the United States. ERO Removal Division leadership learned of the order at approximately 11:35am EST.

7. The flight arrived in Guatemala City, Guatemala at approximately 12:40pm EST, and the 35 individuals believed at the time to be unaccompanied minors were transferred to Guatemalan officials within approximately 15 minutes of arrival. At the time the flight arrived in Guatemala City and the unaccompanied minors were transferred, neither the ICE personnel on the flight, nor those on the ground in Guatemala City, were aware of the injunction. Shortly thereafter, 3 of those individuals were identified as adults by the Government of Guatemala.

8. After the transfer of the 32 accompanied minors, ICE personnel on the ground in Guatemala were informed of the order at approximately 1:09pm EST.

9. At approximately 1:36pm EST, the *Procuraduría General de la Nación*, Guatemala's national agency with similar responsibilities to those of the U.S. Department of Health and Human Services, notified the local ERO Foreign Service National employee that 4 of the unaccompanied minors had tested positive for COVID-19 upon arrival.

10. Following transfer of the 32 individuals confirmed to be unaccompanied minors to Guatemalan officials, at approximately 1:58pm EST, the ERO Foreign Service National employee obtained from Guatemalan officials contact information for the adults to whom the minors were ultimately released in Guatemala.

11. Shortly before 5:00pm EST, ICE personnel on the ground were informed by ERO headquarters of the DHS determination that the 32 minors should not be returned to the United States on the return flight.

12. The aircraft used for this flight departed Guatemala for the United States at approximately 6:20pm EST with 2 pilots, 1 mechanic, 3 flight attendants, 13 contract security officers, 2 contract nurses, and 1 ICE ERO Deportation Officer, the same flight crew that had been aboard the outbound flight earlier that day. The return flight lasted 4 hours and 10 minutes.

ERO followed existing protocols to sanitize the aircraft and notify employees and flight crew of the potential contagion upon return to the United States.

This declaration is based upon my personal and professional knowledge, information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by DHS.  I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry for the above captioned case.

Signed on this 2nd day of December, 2020.

_____
Jeffrey D. Lynch
Deputy Assistant Director
International Operations Division
ICE Enforcement and Removal Operations