## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

P.J.E.S. A MINOR CHILD, by and through his
father and NEXT FRIEND, Mario Escobar
Francisco, on behalf of himself and others
similarly situated,

        Plaintiff,

    v.

CHAD WOLF, Acting Secretary of
Department of Homeland Security, et al.,

        Defendants.

Civil Docket No. 1:20-cv-02245-EGS

### DECLARATION OF RODNEY S. SCOTT

I, Rodney S. Scott, pursuant to 28 U.S.C. § 1746, and based upon my personal

knowledge, and documents and information made known or available to me as of the time of

signature from official records and reasonably relied upon in the course of my employment,

hereby declare as follows:

1.  I am a 28-year veteran, and serve as the Chief, of the U.S. Border Patrol (USBP), within

    U.S. Customs and Border Protection (CBP).  Prior to being the Chief of USBP, I was the

    Chief of the San Diego Sector.  That Sector (a term for the geographic demarcation of a

    particular area of responsibility within USBP) includes approximately 60 linear miles of

    border shared with Mexico and 931 miles of coastal border, with approximately 2,200

    Border Patrol Agents.  I have also served in various other leadership positions in USBP,

    including Chief Patrol Agent of the El Centro Sector; Deputy Chief Patrol Agent at San

    Diego Sector; Patrol Agent in Charge at the Brown Field Station in San Diego Sector;

1

Assistant Chief in CBP's Office of Anti-Terrorism in Washington, D.C.; and Director/Division Chief for the Incident Management and Operations Coordination Division at CBP Headquarters.

2. In my position as the Chief of USBP, I am responsible for executing the missions of the Department of Homeland Security (DHS), CBP, and USBP. The USBP is the primary federal law enforcement organization responsible for preventing the entry of terrorists and their weapons and for preventing the illicit trafficking of people and contraband between ports of entry. USBP has a workforce of over 21,000 personnel who patrol more than 6,000 miles of the United States land borders. As Chief, I am also responsible for the daily operations of USBP, including the development and implementation of all nationwide policy decisions.

3. I am familiar with the Centers for Disease Control and Prevention (CDC) *Order Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists* (Mar. 20, 2020) (CDC Order) and subsequent extensions and amendments, as well as CBP's role in assisting with implementing this Order.

4. I am familiar with the U.S. District Court for the District of Columbia's November 18, 2020 order (District Court Order) in *P.J.E.S. v. Wolf, et al.,* No. 1:20-cv-02245 (D.D.C. August 14, 2020), that, among other things, certified a class of unaccompanied noncitizen children who are or will be in U.S. government custody and would be expelled consistent with the CDC Order, generally discussed above. I also understand that the District Court Order enjoined CBP from "expelling the Class Members from the United States under the CDC Order Process, whether pursuant to an Order issued by the Director of the Centers for Disease Control and Prevention under the authority granted by the Interim Final Rule,

2

85 Fed. Reg. 16559-01, or the Final Rule, 85 Fed. Reg. 56,424-01." I further understand that the U.S. District Court for the District of Columbia denied the government's request for a stay pending appeal. I submit this declaration to inform the court that USBP recently discovered that it has expelled from the United States 26 class members since November 18, 2020.

5. On November 18, 2020, USBP headquarters issued guidance on the District Court's preliminary injunction to all USBP Field Chiefs and Field Deputies for immediate implementation in their Area of Responsibility. Specifically, the guidance provided that operational procedures must be amended to immediately prohibit the expulsion of class members under Title 42. Additionally, the guidance further confirmed that all unaccompanied alien children (UACs) must be appropriately processed consistent with applicable law and policy.

6. From November 18, 2020 through December 10, 2020, USBP has encountered 3,740 UACs across the northern and southern borders, who have been processed under Title 8, consistent with the District Court Order and USBP guidance discussed above. However, despite the timely issuance of guidance regarding the District Court's preliminary injunction, from November 19, 2020 through November 28, 2020, USBP expelled from the United States 26 class members, ranging in age from 14 to 17 years old. Nineteen (19) of these encounters occurred in the Rio Grande Valley Sector, four occurred in El Paso Sector, two occurred in San Diego Sector, and one occurred in Del Rio Sector. Of those 26 minors, nine were subsequently re-encountered after again illegally entering the United States, and were then processed under Title 8, pursuant to the District Court Order.

3

7. It is my understanding that USBP Headquarters (HQ) was first notified that a class member had been expelled under Title 42 on November 19, 2020, in the course of a routine data quality check. I was informed of the expulsion that same day. Since that date, USBP HQ has been in constant communication with its field offices to address this issue. Upon learning of the expulsion of a class member on November 19, 2020, USBP HQ immediately sent out an email to all sectors demanding that this not happen in the future. On November 23, 2020, I was updated on the issue of class member expulsions along the southwest border. On November 23, 2020, USBP conducted a teleconference with all Sector Chiefs and staff concerning compliance with the preliminary injunction, including clear expectations and accountability measures to be implemented. Additionally, USBP conducted a WebEx meeting with Sector Chiefs and staff on December 1, 2020, reiterating the guidance issued as a result of the court's order. USBP has continued to conduct messaging to ensure compliance with the District Court Order up to and including today. Among those measures, today USBP HQ (i) again re-sent the preliminary injunction guidance to all sectors, and (ii) conducted a teleconference with all Chiefs and Deputies to share best practices across the nation.

8. Based on USBP's investigation thus far, it appears that these expulsions may have resulted from first-line supervisors and field agents being unaware of the guidance. Guidance is received at USBP Headquarters. Guidance is then contextualized for the operational environment and provided to the field in writing and through senior leader meetings. Senior leaders, known as Chief Patrol Agents, convey the guidance to the field level agent through their respective staffs. The ongoing COVID-19 environment has impacted the ability of station management, to include Watch Commanders and first-line

4

supervisors, to hold in-person musters with field agents and conduct traditional in-person question and answer sessions. Due to CDC COVID-19 protocols, in person musters are currently generally limited, therefore most messages are disseminated via email, pre/post vehicle inspection, and message boards.

9. At every opportunity and to ensure widest distribution, USBP has reiterated to field personnel the guidance related to the court's order on numerous occasions. Sector Chiefs have been provided with clear expectations and accountability measures to ensure strict compliance and adherence to the court's order. USBP HQ and sector level monitoring protocols have been instituted to ensure compliance and that any expulsions of class members are being and, as necessary, will continue to be, addressed. The Patrol Agents in Charge supervise the agents in the field. The chain at each sector is Chief Patrol Agent, Deputy Chief Patrol Agent, and Division Chief of Operations. Sector staff (including the Chief Patrol Agents) disseminate guidance to the stations, and the Patrol Agents in Charge are responsible for executing upon task. The Division Chief of Operations supervises the Patrol Agents in Charge.

10. In order to address these past expulsions, and prevent any reoccurrence in the future, USBP HQ required a memorandum from each involved sector's Chief Patrol Agent explaining, in detail, the causes of each expulsion. Each Chief Patrol Agent explained the events that led to each expulsion. Formal discipline is being actively considered for these Chief Patrol Agents and other responsible management officials. Additionally, new processes and redundancies have been introduced across the USBP to avoid future errors. For example, the Rio Grande Valley Sector has mandated that each minor, regardless of whether they are accompanied by an adult, be transported to a central location for

examination by a second-line supervisor.  In El Paso Sector, a process has been implemented dictating that every individual under 18 years of age will be brought to the closest station and be examined by a second-line supervisor, who will then make a disposition determination.  Shift reports have been created to further gain fidelity with quality control.

11. Further, USBP has entered an "alert" into its processing database and system of records containing the biographical and biometric (if applicable) information of each class member expelled under Title 42 by USBP since November 18, 2020, who has not already been re-processed under Title 8.  Should USBP encounter these aliens again, an alert will appear in the system to notify the processing agent that the alien is a *P.J.E.S.* class member who must be processed under Title 8.  Additionally, USBP is working with CBP's Office of Information and Technology to add a Warning Message in its processing database/system of record that will display for all minor aliens who have either not been associated to a Family Unit or have not yet been identified as an unaccompanied alien child (UAC).  The warning message will notify agents that a minor must be either documented as a UAC or associated to a Family Unit in the system of record.  If a minor is documented as a UAC, that will trigger determinations about compliance with the District Court Order.  This warning message will be persistent until a minor meets the criteria mentioned above.  It is my understanding that this system update will be installed by the end of the calendar year.

12. Additionally, USBP has also been in contact with Mexican authorities in an attempt to locate the class members expelled under Title 42 since the injunction was entered, in order to allow for those class members to present to a POE for Title 8 processing, should

6

they still seek admission to the United States.  The affected sectors' Foreign Operations Branch engaged the Consulate and Mexican immigration officials (INM) and gave them photos and biographical data of the expelled class members.  INM reported that it checked the local shelters but have been unable to locate any of the UACs to date.

13. As noted above, USBP's investigation into the circumstances surrounding non-compliance issues is ongoing.  Accordingly, as USBP is actively continuing to develop facts, it is possible that USBP may identify new or additional information that may change the reporting described in this declaration in some way.

14. CBP, and specifically USBP, sincerely regret these errors and fully understand the gravity of the circumstances and are committed to taking appropriate actions to redress these concerns.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, as of the time of signature.

Executed this 11th day of December, 2020.

Rodney S. Scott
Chief of the U.S. Border Patrol
U.S. Border Patrol
U.S. Customs and Border Protection
U.S. Department of Homeland Security